**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHERYL K. DANYLCHUK,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:04-CV-931-Y** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Cheryl K. Danylchuk brings this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying her claim for disability benefits under Title II and supplemental security

income or SSI benefits under Title XVI of the Social Security Act.  Danylchuk applied for disability

insurance benefits on May 7, 2001 and SSI benefits on September 24, 2001, alleging that her

disability began March 20, 1999.  (Tr. 281, 298).  Her disability insured status expired June 30,

2003.

After the Social Security Administration denied her applications for benefits initially and on reconsideration, Danylchuk requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on June 26, 2003 in Fort Worth, Texas.  (Tr. 35-56). Danylchuk was represented by counsel.  On July 17, 2003, the ALJ issued a decision that Danylchuk retained the capacity for a modified range of sedentary work and was not entitled to disability or SSI benefits.  (Tr. 16-24).   The Appeals Council denied Danylchuk's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 5).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.   Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations.

*Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id*.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 3

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000);  *Hollis*, 837 F.2d at 1383.

C.      ISSUES

      1.      Whether the ALJ gave due consideration to treating source opinions.

      2.      Whether the residual functional capacity (RFC) assessment is supported by substantial evidence.

      3.      Whether the ALJ gave adequate attention to Danylchuk's subjective complaints.

D.      ADMINISTRATIVE RECORD

      1.      Treatment History

Danylchuk sustained a work-related injury on March 20, 1999 while trying to move a pallet at work.  (Tr. 172).  Danylchuk saw orthopedic surgeon Trey Fulp, D.O., in August 1999 after several months of physical therapy proved unsuccessful at relieving back pain that radiated into her left buttock.   (Tr. 172).  On examination Danylchuk exhibited a restricted range of motion in her low back, reduced reflexes in her lower extremities, and straight leg raising caused mechanical low back pain, but no radicular pain.  Fulp diagnosed lumbar radiculitis and possible degenerative disc disease.  (Tr. 175).

Magnetic resonance imaging (MRI) of Danylchuk's lumbar spine showed a loss of disc space height at L5-S1 with signal changes at that level.  (Tr. 171).  After reviewing the MRI report, Fulp opined that epidural injections were not likely to be helpful because Danylchuk's problem was a degenerative disc segment rather than a compressive neuropathy.  (Tr. 171).   He ordered a

discogram[1] to confirm that L5-S1 was the level causing Danylchuk's symptoms.  The discogram was performed and showed concordant pain at L5-S1.  (Tr. 168).  Because nine months of physical therapy had failed to provide results, Fulp opined that surgery was the next advisable step.  (Tr. 168).  He completed a form excusing Danylchuk from work until she had surgery.  (Tr. 169).

On March 13, 2000, Danylchuk underwent a diskectomy[2] and one-level fusion at L5-S1.  (Tr. 180-82).  Danylchuk initially did well post-operatively and was advised to walk two miles each day.  (Tr. 163, 165-66).  At a post-operative visit with Fulp on July 5, 2000, she complained of back pain, and a physical examination yielded some abnormal results.  (Tr. 161).  Fulp recommended therapeutic injections at Danylchuk's sacroiliac joint and ordered additional diagnostic tests.  He noted that, clinically, there were no radicular signs or symptoms. (Tr. 157).  X-rays were performed and showed the surgical hardware in good position with progress towards a solid fusion. (Tr. 156).  Fulp again advised that Danylchuk was unable to work (by checking the box marked "not able to work" on a preprinted form), and issued another similar statement in September 2000.  (Tr. 156, 160).

On January 15, 2001, Danylchuk underwent a functional capacity evaluation that showed her to have the capacity for light work, but limited postural tolerances that would require her to frequently change positions.  (Tr. 188).  The Beck Depression Inventory was administered and indicated that Danylchuk had a moderate level of depression.  (Tr. 189).

---

[1] A discogram or diskogram is a radiographic study of an intervertebral disc.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 526 (29th ed. 2000).

[2] A diskectomy is excision of the an intervertebral disk. *Id*.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 5

Fulp reported on January 18, 2001 that Danylchuk could return to full-time employment with a fifteen-pound lifting limit.  He opined that she would likely require sedentary-type work.  (Tr. 154).  During a follow-up visit with Fulp on February 21, Danylchuk reported increased pain in her thighs.  Fulp noted that the fusion appeared to be solid, but ordered electromyography to determine if there was any neurological dysfunction.  (Tr. 153).

Danylchuk saw John A. Sklar, M.D., on February 23, 2001 for purposes of assessing her functional capacity and determining whether she had achieved maximum medical improvement. (Tr. 193).  Danylchuk complained of pain in her back and both legs.  She was tender to palpation of her lumbar paraspinal muscles and gluteal muscles bilaterally.  Lumbar range of motion was restricted.  Strength testing was intact, but sensation was decreased over Danylchuk's foot and deep tendon reflexes were decreased at her  right ankle.   Straight leg raising was negative in a seated position, but elicited some complaints of pain.  Supine straight leg raising was positive at thirty degrees on the right and forty degrees on the left.  Sklar noted that Waddell signs were positive in four out of five categories.[3]  (Tr. 194).

Sklar diagnosed myofascial[4] pain syndrome with symptom magnification.  He also found that Danylchuk suffered from a moderate to severe depression, and advised her to consider using antidepressants. He opined that she had not achieved maximum medical improvement, and he

---

[3] Waddell signs are a group of five signs, identified by physical examination, that are indicative of the presence of nonorganic problems in patients with low back pain.  DA Scalzitti, *Screening for Psychological Factors in Patients With Low Back Problems: Waddell's Nonorganic Signs*, 77 J.  Am. Physical Therapy Ass'n 306-12 (March 1997), http://www.ptjournal.org/March97/scalzitti.cfm

[4] Myofascial pain syndrome is a group of common nonarticular disorders characterized by achy pains, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures.   THE MERCK MANUAL 481 (Mark H. Beers & Robert Berkow eds., 17th ed. 1999)

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 6**

recommended that Danylchuk participate in eighteen sessions of chronic pain management.  Sklar

suggested  that he was one of the best professionals in the region to administer that program.  (Tr.

194).  Fulp concurred with Sklar's recommendation.  (Tr. 152).

Sklar also performed a functional capacity evaluation.  Danylchuk demonstrated the ability

to lift twenty-seven pounds from a squatting position and nineteen pounds from a high near lift

position; however, Sklar opined that Danylchuk was not giving maximum effort during the test.  He

found her capable of performing work consistent with the Dictionary of Occupational Titles

definition for light work, but also thought she would not make a good employee or perform well on

a sustained basis because she would likely be subject to frequent absenteeism.  (Tr. 194-95).

Danylchuk returned to see Sklar on March 28, 2001 for assessment of her chronic pain

complaints.  Sklar prescribed Effexor to address Danylchuk's problems with depression, and

explained (in seeking insurance approval for the medication) that chronic pain is often responsive

to or improved by the use of antidepressants.  (Tr. 229).  Danylchuk reported little or no change in

her condition during regular follow-up visits over the summer.  (Tr. 218-28).

Danylchuk submitted to a psychological evaluation with Burton Zung, Ph.D., on April 16,

2001.  The evaluation was ordered to assess whether there was a psychogenic component to

Danylchuk's physical symptoms.  (Tr. 234).  Danylchuk drove herself to the interview.  Zung

observed that she walked with a limp and mildly slowed gait, and she changed positions fairly

frequently.  Her speech quality was considered clear, fluent and grammatical, with relevant thought

content that was logical and goal directed.  Her mood was frustrated, and her affect was congruent.

(Tr. 236).  Danylchuk rated her pain level as a six on an ascending ten-point scale.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 7

Danylchuk said that she felt guilty about her situation. Other symptoms included irritability, weight gain, and a lack of social activities. (Tr. 236). Zung found that Danylchuk felt at the mercy of her pain and opined that she had learned no behavioral techniques to help her cope and reduce the disruption of her daily routine. Testing indicated that Danylchuk had relatively poor insight regarding her behavior and motivation. Personality testing was consistent with a somatoform pain disorder[5] and mood disorder. (Tr .238). Zung also diagnosed major depressive disorder, single episode, of moderate severity. Zung assigned Danylchuk a Global Assessment of Functioning (GAF) score of 53.[6] (Tr. 238).

A second psychological evaluation was performed by John Savell, Ph.D., on September 13, 2001 for purposes of vocational counseling through Goodwill Industries. (Tr. 252). Danylchuk was oriented and demonstrated coherent and logical thoughts during the interview. She was able to remember five digits forward and four digits in reverse. (Tr. 253). She exhibited a constricted affect consistent with evidence of mild depression. (Tr. 254). Testing indicated that Danylchuk functioned in the borderline range of intelligence. (Tr. 254). Savell assessed a major depressive disorder, mild and single episode, and borderline intelligence, but no evidence of a learning disability. (Tr. 257-58). He assigned a current GAF score of 55.

Danylchuk submitted to a consultative evaluation with David Ray, D.O., on September 18,

---

[5] A somatoform pain disorder is one in which pain in one mor more anatomic sites is exclusively or predominantly caused by psychologic factors, is the main focus of the patient's attention, and results in significant distress and dysfunction. MERK MANUAL at 1511.

[6] A GAF score of 51-60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000)(DSM-IV).

2001 to assess her complaints of back pain.  (Tr. 259).  Ray noted that Danylchuk walked with a pronounced limp and complained of pain in her left hp.  Reflexes were 1+/4 and equal bilaterally.  Examination of her lower back revealed muscle spasms and decreased range of motion with sensory changes and paresthesias in both legs.  Lumbar flexion measured forty-five degrees and elicited complaints of pain.  (Tr. 260).  Danylchuk was able to heel and toe walk without difficulty, but squatting was limited by back and leg pain.  X-rays confirmed previous surgery, but were otherwise normal.  (Tr. 261).

During a check-up on November 14, 2001, Danylchuk complained to Sklar that she was having a lot of back pain and trouble sleeping.  (Tr .217).  She reported that Fulp had closed his practice and she needed a new doctor.  In December, Danylchuk reported sleeping better, which enabled her to be more active.  (Tr. 216).

Danylchuk returned in January 2002.  She reported having more diarrhea when she took the medication Norflex, and Sklar told her to discontinue that prescription.   She felt that she was doing better and was stretching and walking for exercise, but had increased stress because she was getting a divorce and her daughter was moving in with her.  (Tr. 215).

Danylchuk underwent a consultative psychiatric evaluation with Tara Reddy, M.D., on March 22, 2002.  Danylchuk complained of crying spells, interrupted sleep, decreased appetite, poor concentration, and feelings of isolation, helplessness, and hopelessness. (Tr. 262).  Remote memory was good and immediate recall was intact, but recent memory was poor as demonstrated by her ability to name only two of the past four Presidents.  Her concentration and insight were good, and intelligence was rated as average. Her pace and persistence were considered slow. Reddy diagnosed

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–**Page 9**

a dysthmic disorder and assessed a current GAF score of 55 and previous GAF score of 60. (Tr. 115, 263).  Danylchuk's prognosis was considered good with treatment.  (Tr. 115).

In August 2002, Danylchuk told Sklar that she was depressed and sometimes wished she were dead.  She complained of pain that prevented her from sleeping.  She had been without her medications since March because she had been trying to change physicians.  (Tr. 214).  Sklar instructed her to resume her medications.  At a follow-up visit the following month, Danylchuck complained of an upset stomach and was trying to take her medications as infrequently as possible. (Tr. 213).  Her current medications included Pamelor, Effexor, and Vicodin.

Sklar completed a questionnaire at the request of Danylchuk's attorney in September 2002. Sklar indicated that Danylchuk's condition met or equaled Listing 1.04 in the administrative listing of impairments.  (Tr. 265).  He also opined that Danylchuk was limited to walking, standing or sitting for less than two hours during the workday.  He restricted her to lifting five to ten pounds on a regular basis, and concluded that she was incapable of performing even sedentary work. (Tr. 268).

2.      Administrative Hearing

Danylchuk was born April 10, 1961 and was 42 years old on the date of the administrative hearing. (Tr. 37).  She has a GED and previous work experience as a stock clerk, convenience store cashier, cashier/checker, shoe salesperson, and waitress. (Tr. 38, 53, 71).  Danylchuk testified that her back and leg pain prevent her from working.  She also testified that she has chronic diarrhea with episodes that occurred as frequently as ten to twenty days out of the month and required eight to ten visits to the bathroom during the day.  (Tr. 43, 51).

Danylchuk testified that she had to rest after walking ten to twenty steps because of pain,

spasms, and tingling in her legs.  (Tr. 44).  She testified that, approximately a year before the

hearing, her legs went numb and caused her to fall and break her wrist.  (Tr. 47, 240).  She

anticipated scheduling an appointment with another surgeon to find out why her legs were getting

worse.  (Tr. 48).  However, she was uncertain that she would agree to additional surgery given the

poor outcome of her previous surgery.  (Tr. 52).

Danylchuk testified that her children do most of the housework.  (Tr. 44-45).  She rarely

attended church services and spent most of her time watching television, (Tr. 46), but she testified

that she could drive short distances and drives her children to school each morning.  (Tr. 45).  She

testified that she could lift a gallon of milk using both hands.  (Tr. 46).  She continued to have

trouble sleeping, and none of her medications helped with her pain or depression.  (Tr. 49).

Danylchuk testified that at least two days a week she was unable to get out of bed because of the

pain.  (Tr. 51-52).

Vocational expert Shelly Eike also testified.  She classified the job of stocking clerk as

semiskilled, heavy work.   Eike also testified that work as a convenience store cashier requires light

exertion and is an unskilled position.  The jobs of cashier/check,  shoe salesperson or waitress are

all semiskilled positions requiring light exertion.  (Tr. 53).  The ALJ asked Eike to consider the

following hypothetical:

> An individual with a high-school equivalent education, past work as you have
> described, and assume 38 years of age at the time in question.  Assume this
> individual had a residual functional capacity for only sedentary work, but needed
> frequent opportunities to sit or stand throughout the workday, and was further limited
> to the lower end of detailed instructions.  Could – would such an individual be
> capable of performing any of the past work?

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 11

(Tr. 53). Eike answered in the negative, but testified that there would be other work available in the national economy. Suitable jobs included sedentary, unskilled cashier positions such as a food order clerk and sedentary; unskilled work as a small parts inspector or small product assembler. (Tr. 54). Eike testified that a person who missed work two days a week or was unable to stay on task because she needed to visit the bathroom eight times a day would not be able to work at a competitive level. (Tr. 54-55).

3.      ALJ Decision

The ALJ found that Danylchuk had not engaged in substantial gainful activity after her alleged onset date, despite some evidence that she had worked after that date. (Tr. 17). He found that Danylchuk had severe impairments consisting of her status post one-level fusion in her lumbosacral spine, borderline intellectual functioning, somatoform pain disorder, dysthmic disorder, and major depressive disorder, but he further found that Danylchuk had no impairment or combination of impairments that met the severity of any condition found in the listing of impairments. (Tr. 17). In assessing Danylchuk's mental impairments, the ALJ concluded that Danylchuk had experienced mild restriction in her activities of daily living and social functioning; moderate deficiencies in concentration, persistence or pace; and no episodes of decompensation. (Tr. 22). *See generally* 20 C.F.R. §§ 404.1520a, 416.920a.

After reviewing Danylchuk's treatment history and her testimony during the hearing, the ALJ concluded that Danylchuk retained the residual functional capacity (RFC) for a modified range of sedentary work that allowed frequent opportunities to sit and stand and was limited to work performed at the lower end of detailed instructions. (Tr. 22). Although Danylchuk could not return

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 12**

to any of her past relevant work, the ALJ found that there were a significant number of other jobs available in the national economy that Danylchuk could perform.  (Tr. 23).  Accordingly, the ALJ decided that Danylchuk was not entitled to disability insurance or SSI benefits.  (Tr. 24).

D.      DISCUSSION

1.      Treating Source Opinions

Danylchuk contends that the ALJ failed to give due deference to the treating source opinions found in the record.  She notes that Fulp reported on at least five occasions that she was unable to work, and Sklar opined that his patient was incapable of even sedentary work.

When a treating physician's opinion is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record, it is entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected.  In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight.  Social Security Ruling 96-2p.  The ALJ must consider the following factors before rejecting a treating source opinion: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization.  *See* 20 C.F.R. §§ 404.1527(d),

416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5ᵗʰ Cir. 2000).  *See also* SOCIAL SECURITY RULING 96-2p, 96-5p.

The ALJ acknowledged that Sklar had opined that Danylchuk was limited to less than sedentary exertion; however, the ALJ also noted that Sklar's own examination notes confirmed invalid straight leg raising tests, positive Waddell signs, and symptom magnification by Danylchuk. Given the objective findings, the ALJ found that Sklar's opinions were not entitled to controlling weight.  (Tr. 21).  Instead, the ALJ decided to give Danylchuk the benefit of the doubt and limit her to work at the sedentary level of exertion with opportunities to sit or stand throughout the workday. (Tr. 22).  Danylchuk has not demonstrated any material flaws in the ALJ's reasons for assigning less weight to Sklar's opinions.

Equally unavailing are her arguments that Fulp's conclusory disability opinions were deserving of controlling weight.  Each of those opinions were issued either before or within a few months after Danylchuk's surgery.  By January 2001, Fulp opined that Danylchuk could return to some type of sedentary work activity, although he also accepted Sklar's judgment that a series of pain management sessions could improve Danylchuk's condition.  Moreover, conclusory statements of a person's disability or inability to work are opinions on ultimate issues reserved to the Commissioner and are never deserving of special significance.  20 C.F.R. § 404.1527(e), 416.927(e). Although Danylchuk argues that the ALJ improperly substituted his own unqualified opinions for the medical opinions from treating sources, the objective record contains substantial evidence to support the ALJ's decision.

Danylchuk also urges that the ALJ should have recontacted her treating physicians if he

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 14

found their opinions and records to be inconclusive or inadequate.  The ALJ has a duty to develop the facts fully and fairly, and if he does not satisfy this duty, his decision is not substantially justified.  *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995).   If necessary, the ALJ should recontact a treating physician to  resolve any doubts or gaps in the record.  *Newton*, 209 F.3d at 457-58.  *See also* 20 C.F.R. §404.1512(e).  But the ALJ nowhere describes the available record as insufficient or ambiguous and notes no gaps in the record that would require supplementation.   Moreover, Danylchuk has not shown what additional information was available, and fails to establish prejudice by showing that, if the ALJ had developed the record further, evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458.

> 2.      Residual Functional Capacity Assessment

Danylchuk asserts that the ALJ failed to articulate an adequate basis for his residual functional capacity (RFC) determination, and further erred in failing to adequately incorporate her mental limitations in the hypothetical he presented to the vocational expert.

RFC is what an individual can still do despite his limitations.  20 C.F.R. § 416.945(a); SOCIAL SECURITY RULING 96-8p.  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SOCIAL SECURITY RULING 96-8p.  RFC is not the least an individual can do, but the most.  *Id.*  The RFC assessment must include a narrative discussion describing how the evidence supports each

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**

conclusion, citing specific medical facts and nonmedical evidence. *Id.* The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *Id.*

A review of the ALJ's decision establishes that he sufficiently outlined the reasons underlying his RFC assessment. He considered Danylchuk's subjective complaints and the objective medical findings, (Tr. 18-21), and agreed that Danylchuk suffered some pain and functional loss that would necessitate a limitation to sedentary work with a sit/stand option. He further found her incapable of complex work because of her given mental limitations. (Tr. 22). But he also explained why her impairments were not so severe as to preclude all levels of work activity. (Tr. 21, 22). Although further explanation might have been preferable or more prudent in Danylchuk's opinion, the ALJ's written decision reflects an adequate basis for the ALJ's conclusion that Danylchuk could perform a modified range of sedentary work activity.

Danylchuk alternatively argues that the hypothetical question the ALJ presented to the vocational expert failed to adequately reflect her work-related mental limitations. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

The ALJ found Danylchuk restricted to work at the lower end of detailed instruction and

presented this limitation to the vocational expert during the hearing.  Danylchuk urges that the question was inadequate because it reflects only her borderline intellectual functioning and identifies no work-related limitations attributable to her moderate deficiencies in concentration, persistence, and pace as found by the ALJ.[7]   However, the ALJ's decision reflects his intent that all of Danylchuk's mental impairments were encompassed in the limitation to simple work or work at the lower end of detailed tasks, (Tr. 22),  and Danylchuk demonstrates no basis for finding the ALJ's determination in this respect to be erroneous or lacking evidentiary support.

3.      Credibility

Danylchuk asserts that the ALJ took an unfavorable view of her subjective complaints without explaining why he found her allegations were not entirely credible.  (Tr. 20).  She also asserts that the ALJ failed to consider the impact of her mental condition on her perception of pain.

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); SOCIAL SECURITY RULING 96-7p.  A claimant's testimony about his symptoms must be consistent with the objective medical evidence and other available evidence.  20 C.F.R. §§ 404.1529.  Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. § 404.1529. An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's

---

[7]      The ALJ's assessment is consistent with Reddy's consultative evaluation when Danylchuk was observed to have intact concentration, but slowed persistence and pace.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 17**

complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Falco,* 27 F.3d at 163; *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988).  But this does not require that the ALJ give precedence to subjective evidence over objective medical evidence.  *Hollis*, 837 F.2d at 1385.

The ALJ found that the objective evidence was incompatible with Danylchuk's allegations of disability, and in particular, he observed that she had demonstrated a lifting ability compatible with a light level of exertion on more than one occasion.  (Tr. 21).  The ALJ also found that Fulp's recommendation that Danylchuk walk two miles each day was not consistent with Danylchuk's allegations of disability.  (Tr. 22).  And contrary to Danylchuk's contentions, the ALJ appreciated the relationship between her pain and her mental impairments. The ALJ noted that Danylchuk's perception of her pain was exacerbated by her somatoform disorder and her reported failure to recognize a relationship between her pain and depression, but he also found that Sklar had provided treatment to help her in this area.  (Tr. 21).

The ALJ's findings with regard to the debilitating effect of a claimant's subjective complaints are entitled to considerable judicial deference.  *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).  The ALJ has provided an adequate explanation for finding Danylchuk's testimony not wholly credible, and that credibility assessment has the support of substantial evidence.

<u>RECOMMENDATION</u>

It is recommended that the Commissioner's decision be affirmed.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–**Page 18**

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 15, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 15, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 19**

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED OCTOBER 25, 2005.

 /s/ Charles Bleil                                               
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–**Page 20**